UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANDREW OKUN AND ERIN WILSON,<br><br>     *Plaintiffs*<br>  v.<br><br>CITY OF NEW ORLEANS,<br>LATOYA CANTRELL, in her official capacity as Mayor of New Orleans, and<br>GILBERT MONTANO, in his official capacity as the Chief Administrative Officer of the City of New Orleans,<br><br>     *Defendants* | CIVIL ACTION NO.:<br><br>SECTION:<br><br>DIVISION:<br><br>JUDGE:<br><br>MAGISTRATE JUDGE: |

## **COMPLAINT**

Plaintiffs ANDREW OKUN and ERIN WILSON bring this action for nominal damages, declaratory and injunctive relief against Defendants for violation of their rights to free speech protected by the First Amendment to the United States Constitution. In support for their claims, Plaintiffs respectfully state:

### **INTRODUCTION**

1.

The City of New Orleans has adopted an employee conduct policy that violates the free speech rights of all City employees. The Policy regulates the online speech of every City employee, constantly. An employee can be fired for any speech critical of the City—regardless of whether that speech pertains to or has any impact upon the person's job. The Policy also provides for discipline or termination if an employee engages in "offensive" speech, which is undefined by the Policy, and is a term so vague that employees cannot know what speech might get them fired.

This is a quintessential government overreach into the lives of private citizens who, although employees of the City, retain the right to enjoy First Amendment liberties in their capacities as private citizens when they are off duty. Plaintiffs challenge this intrusion onto their individual rights.

## JURISDICTION

2.

This is an action for declaratory and injunctive relief and nominal damages pursuant to 42 U.S.C. §1983 based upon the continuing violations of the Plaintiffs' rights under the First Amendment to the United States Constitution.

3.

This Court has jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

## VENUE

4.

Venue is proper in this District because Defendants include the City of New Orleans, the Mayor of New Orleans, and the Chief Administrative Officer of New Orleans, all of whom are, upon information and belief, residents of the jurisdiction of the Eastern District of Louisiana. Additionally, all of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b).

## PARTIES

5.

Plaintiff ANDREW OKUN is a resident of New Orleans. He also is an employee of the New Orleans City Library System, having worked for the Library System since 2012. Mr. Okun engages in free speech and expressive activity in his personal time; he is a writer and an editor, engaged in substantial online communications. Mr. Okun also is a supporter

of a strong library system and the organization of City workers more broadly. In the summer of 2020, Mr. Okun was required to sign the challenged Policy as a precondition of keeping his job. Although he initially refused to provide his signature and vocalized hesitations in signing the Policy, he eventually signed the documents in late July/early August of 2020. He (and all City employees) remain required to abide by the Policy as a term of his continued employment with the City, as it remains in full force and effect.

6.

Plaintiff ERIN WILSON is a resident of New Orleans and has been an employee of the New Orleans City Library System since 2016. In their spare time, Plaintiff Wilson maintains a robust online presence as a creator and influencer on TikTok, streams to private discord audience about art and film, and participates in other online expressive activities. Plaintiff Wilson engages in online humor and social commentary about the transgender experience and challenges gender stereotypes on multiple social media platforms. In the summer of 2020, Wilson was required to sign the challenged Policy as an employee of the Library System. While they initially refused to provide their signature and vocalized hesitations in signing the Policy, Plaintiff Wilson eventually signed the documents in late July/early August of 2020. They (and all City employees) remain required to abide by the Policy as a term of their continued employment with the City, as it remains in full force and effect.

7.

Both Plaintiffs seek to engage in online speech without being subjected to unlawful prior restraint by their employer. The Policy has a significant chilling effect on Plaintiffs' speech and on the speech of other government employees. Because the Policy is far-reaching, overly broad and vague, Plaintiffs and other City employees are fearful that the

Policy could be used to terminate their employment or subject them to discipline at any time.

8.

Defendant CITY OF NEW ORLEANS is a city located in Orleans Parish, Louisiana. The City is a juridical entity capable of suing and being sued. The City is the employer of Plaintiffs and is the entity by which each is employed with the Library System. The City Policy that is being challenged herein as violative of the Constitution applies to all City employees.

9.

Defendant LATOYA CANTRELL is the Mayor of the City of New Orleans. As such, she is chief executive for the City and is final policymaker on all City policies promulgated to govern City employees. She, and her designee Defendant Montano, ultimately oversee and supervise the City employees, are responsible for setting employee policy and for implementing employee discipline. Defendant Cantrell is the final policymaker regarding the adoption and implementation of the Policy being challenged herein. Alternatively, Defendant Cantrell has delegated this responsibility to other staff, including establishing Defendant Montano as final policymaker. Defendant Cantrell also has failed to properly train and supervise her staff to ensure that promulgated employee policies are Constitutional.

10.

Defendant GILBERT MONTANO is the Chief Administrative Officer of the City of New Orleans. As such, he is final policymaker responsible for establishing City administrative policy, at the direction of Defendant Cantrell. He is the individual that formally promulgated the Policy challenged herein, as final policymaker on behalf of the City, and with Mayor Cantrell's permission. He also is the individual responsible for training

and supervising City employees on the implementation of the Policy, and for supervising the staff ultimately responsible for administering discipline pursuant to the Policy.

## FACTUAL ALLEGATIONS

11.

On or around March 13, 2020, at the beginning of the COVID-19 pandemic, the City Library Director, Gabriel Morley, sent an email to library employees stating work would progress as normal. Due to concerns with COVID-19, roughly 50 library workers signed a staff petition asking the City to reconsider the library system's policy. A separate petition was signed by approximately 1,000 members of the general public to ask for a reconsideration of COVID-19 policies and demanding safer spaces for employees.

12.

Following the petition, some City employees created a "Slack" account to discuss work related issues and consider the idea of unionizing. Slack functions as a private messaging system, on which users can engage in group dialogue or individual direct conversations.

13.

On or around June 17, 2020, in the height of COVID-19, Black Lives Matter protests, and the 2020 presidential election campaign cycle, the City of New Orleans, through the Chief Administrative Office, passed Policy No. 83: *Standards of Behavior for City Employees* (herein, Policy).

14.

This Policy limits employee free speech significantly. The portion relevant to this lawsuit provides:

I.   Purpose

The purpose of this memorandum is to revise the standards of behavior guidelines for City of New Orleans employees. Our goal is to provide efficient and courteous service to the public and each other in order to enhance the effectiveness of city government while maintaining the high standards of quality and professionalism necessary to project the best image possible. We are all dependent on each other to accomplish this mission. Our behavior should indicate our willingness to work and demonstrate the pride we have in our profession. The standards given below are to help us achieve our goal.

\*\*\*\*\*\*

V.   Use of Social Media and Social Networking Standards

This section applies to new media, social media, Web 2.0 technologies (including wikis, blogs, social networking, folksonomies, podcasting & content hosting services), digital media and emerging media such as public and private blogs (BlogSpot) or internet-based comment pages (Nola.com, Reddit), micro-blogs (Twitter), video sharing (YouTube or Vimeo), photo sharing (Flickr, SmugHug, Pinterest or Webshots), wikis (WikiSpaces, PBwiki, SocialText or Wetpaint), social networking sites (Facebook, Instagram, Snapchat, TikTok, Google+), web syndications (RSS, Atom, weblogs, vlogs, podcasts), internet-based bulletin boards (forums), newsgroups (Usenet), chat rooms (Discord, Slack, and Telegram), content aggregators (mashups or portals), multiplayer online games (WoW, Farmville, Mafia Wars), and other forms of virtual or digital communications. This is not an exhaustive list.

a. The way we present ourselves and portray our colleagues affects the public's opinion of employees as City employees. If subject matter relates to City policies, City business, or other City workplace issues, City employees are responsible for maintaining compliance with CAO Memorandum No. 110 regarding Media Advisory Procedures, and also No. 61 (R) on Internet Use & Access Authorization.

b. The City respects the rights of City employees to use social media as a medium of self-expression, but as online communications become more of a participatory action, the lines between the public and the private, personal and professional, can be blurred. As public servants, City employees may be perceived as representatives of the City of New Orleans and as such must at all times conduct themselves appropriately and consistently with the City's values and professional standards.

c. City employees should use the following to guide online conversations and social media postings:

- Avoid the offensive. Do not post any defamatory, libelous, vulgar, violent, obscene, abusive, profane, threatening, racially and ethnically hateful, or otherwise offensive or illegal information or material.

- Do not repost or endorse content that promotes, fosters or perpetuates discrimination of protected classes, sexual harassment or illegal activity.

\*\*\*

- Do not post non-public information, confidential city information or information that could compromise the safety or security of the public or public systems, pursuant to the law.

\*\*\*

- Do not engage or respond to negative or disparaging posts about city departments, employees or policies.

VI.   Violations of Standards

Employee violations of a standard of behavior as set forth in this memorandum may subject the employee to disciplinary action and possible termination of employment. The City of New Orleans endorses the use for both classified and unclassified employees of progressive disciplinary action, where appropriate. The suggested progression is verbal warning, written warning, suspension, demotion, and where circumstances warrant, termination. In certain instances, the City may terminate without progressive discipline where egregious conduct occurs. The implementation of disciplinary measures shall be at the discretion of a supervisor and/or the appointing authority, and consistent with civil service rules where applicable.

15.

All staff were informed that they were required to sign the Policy.

16.

This Policy substantially burdens the free speech of workers of the City of New Orleans. It is an unconstitutional prior restraint on speech; the Policy bans speech before it even occurs, rather than penalizing harmful speech after it happens. It censors, in advance, even private speech that has no connection to or impact upon the workplace. Government interests in regulating the speech of its employees cannot outweigh an employee's First Amendment rights when there is no link between an employee's job and the subject matter or context of the expression.

17.

The Policy is a form of unconstitutional viewpoint-based discrimination. Pursuant to the Policy, Plaintiffs cannot express viewpoints that are "critical" of any arm or policy of City government. If their trash is not picked up, Plaintiffs cannot tweet about perceived inefficiencies in the Department of Sanitation. If there is a broken water line in front of their homes, they cannot post about it on Facebook—because it would be "negative" speech about the City agency Sewerage and Water Board. Or if their car loses an axle in a gaping pothole, they cannot even send a Slack message to a friend bemoaning the City's failure to repair the streets. Unless their speech were entirely positive, City employees could not observe that the Hard Rock Hotel collapsed or that the City was subject of a cyber-attack. Neither, of course, could they criticize the Mayor's propositions regarding the library budget. They are silenced by this Policy as to all City matters.

18.

The Policy is unconstitutionally overly broad. It instructs City employees what they shall not say—even in their private time. It prohibits speech by City employees without regard to the effect that the speech has on the efficient operation of the City or the workplace. The categories of speech limited by the Policy are so expansive that it purports to regulate large swaths of speech that are constitutionally protected. The Policy would prohibit sharing a Facebook post detailing a former President's sexist remarks to a journalist if that post were perceived as "vulgar" or "offensive" to some. The Policy also would prohibit the sharing of an article advocating for the legalization of marijuana or arguing that citizens have the right to own machine guns.

19.

The Policy extensively regulates speech outside the workplace. It bans "profane" speech in private communications on forums such as World of Warcraft and Farmville: video games,

played in the privacy of one's home, on one's own time— and which are wholly unrelated to the proper functioning the workspace. This level of individual regulation does not further City interests: It does not advance government interests in effective operations, or in fostering a harmonious workplace by ensuring cordial working relationships. There is no government interest served by a prior restraint on an employee's ability to curse via chat when playing video games, or to message a friend with potentially offensive opinions.

20.

In addition to unconstitutionally regulating speech unrelated to the workplace, this Policy unconstitutionally proscribes workplace-related speech that is protected.

21.

The Policy prohibits employee- to- employee speech critical of the City, which has the effect of preventing all online speech seeking to organize workers. The Policy prohibits employees from discussing their dissatisfaction with City practices and policies, businesses or workplace issues even over private interfaces such as Slack. These restrictions suppress employees' ability to promote organization and unionization amongst themselves.

22.

This Policy provides no protection for speech made by an employee acting as a private citizen, or where speech is made on matters of public concern. The term "civil servant" implies not only an obligation to serve the Mayor, but also an obligation to serve the public interest. Plaintiffs take the role of "civil servant" very seriously and recognize that at times they may have an obligation to serve as whistleblowers to inform the public of the deficiencies in their workplace, of which they are best positioned to know. They also may, at times, want to speak as private citizens on matters of public concern.

23.

Prohibiting speech that is critical of the City in any context, whether between two employees or between an employee and a member of the public on a matter of public

concern, prevents all City workers from this role as a connector between the public and government. Limiting public employees in this regard compromises the core value of the Free Speech Clause of the First Amendment: to promote unhindered debate on matters of public importance.

24.

The speech restrictions also are so vague that an average individual would not know what speech is restricted. What is "offensive?" What is "vulgar?" "violent?" "obscene?" or "abusive?" What is "speech that promotes, fosters, or perpetuates discrimination of protected classes, sexual harassment, or illegal activity"? The Policy's terms are so vague that City employees do not know what speech actually may run afoul of the Policy. This has an enormous chilling effect on speech that is otherwise protected.

25.

Because the language of the Policy is so nebulous, Plaintiffs are fearful of engaging in off-duty online speech with friends and the public. They fear expressing themselves, because this Policy regulates their expression regardless of where or to whom it is communicated. Plaintiffs feel constantly at risk in speaking about their opinion on politics, arts, books, cartoons, and a plethora of other issues for fear of saying something "offensive" or that otherwise runs afoul of the Policy.

26.

The burdens imposed by the Policy are not sufficiently related to any City interest in workplace administration adequate to justify the restriction of employee free expression.

## STATEMENT OF THE CLAIM: FIRST AMENDMENT

Plaintiffs re-allege and herein incorporate by reference the allegations set forth in paragraphs above. The Policy is unconstitutional facially and as applied to Plaintiffs, in violation of the First Amendment of the Constitution of the United States.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray that this Court:

A. Declare Policy No. 83: *Standards of Behavior for City Employees*; unconstitutional facially and as applied, as violative of the First Amendment to the United States Constitution;

B. Enjoin Defendants from continued enforcement of the Policy;

C. Award nominal damages to the Plaintiffs;

D. Award costs and reasonable attorneys' fees to the Plaintiffs;

E. Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Katie M. Schwartzmann*
Tulane First Amendment Law Clinic
Katie M. Schwartzmann La Bar No. 30295
6329 Freret Street, Suite 130
New Orleans, La 70118
kschwartzmann@tulane.edu
o: (504) 862-8813

*With substantial assistance by Karolyn Eilertsen, incoming Clinic student attorney, motion for admission forthcoming*